UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEAN-CLAUDE FRANCHITTI, ON BEHALF OF THE UNITED STATES OF AMERICA,<br><br>    *Plaintiffs*,<br><br>v.<br><br>COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION and COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION<br><br>    *Defendants*. | Civil Action No. 3:17-cv-06317<br><br>**MEMORANDUM AND ORDER DENYING MOTION TO DISMISS** |

  This case is before the Court on Defendants Cognizant Technology Solutions Corporation and Cognizant Technology Solutions U.S. Corporation (collectively "Cognizant") motion to dismiss the Second Amended Complaint. (ECF No. 123). Oral argument was heard on April 17, 2023.

  The Court has jurisdiction since the Second Amended Complaint alleges violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, and venue is proper under 28 U.S.C. § 1391 as the underlying events occurred in the District of New Jersey.

1

Counsel for Cognizant requests that "the Court examine Relator's remaining theories under the benefit of fuller information and briefing because recent case law shows they are legally unviable". (ECF No. 123-1 p. 8) . This motion is more akin to a motion for reconsideration than a motion to dismiss the complaint. Counsel directs the Court to two recent cases that support Defendants' position that no claim under the Federal Claims Act exists, *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923 (N.D. Cal. 2019) and *United States ex rel. Billington v. HCL Techs. Ltd.*, No. 3:19-CV-01185(SALM), 2022 WL 2981592 (D. Conn. July 28, 2022).

The court in the *Billington* case refers to my prior decision and characterizes it as an "incredibly expansive view of the FCA." *Billington*, 2022 WL 2981592. Billington notes that the FCA "is not an all-purpose antifraud statute, or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Id*. (quoting *Universal Health Servs., Inc. v. U.S.* 579 U.S. 176, 194 (2016)). Similarly, the *Lesnik* case holds that no FCA claim exists because there is no obligation to pay the government for a petition-based visa when one was not made. That is, the obligation under the FCA "cannot be merely a potential liability." *Lesnik*, 374 F. Supp. 3d at 940.

Having considered the *Lesnik* and *Billington* decisions, the Court finds its prior decision is reasonable.  First, the law of the Third Circuit controls in this case; and the *Billington* and *Lesnik* cases are out-of-circuit district court cases.

Second, as noted above, the *Billington* case focuses on the theory that the FCA is not an all-purpose anti-fraud statute, or a vehicle for punishing a garden-variety breach of contract or regulatory violations. *Billington,* 2022 WL 2981592, *10 (D. Conn. July 28, 2022).

The facts in this case are far beyond the "garden-variety" category. Here, Cognizant provides technology services to companies which do not maintain in-house IT employees. (ECF No. 114 ¶15). To satisfy customer demand and offer a lower cost to its prospective customer, Cognizant recruits IT personnel from India. (ECF No. 114 ¶17). For an Indian citizen to work in the United States, a work visa must be obtained. (ECF No. 114 ¶19). An Indian citizen may apply for several different types of visas based on the type of work, cost and administrative criteria.

At the top-end of the visa spectrum, the H-1B visa program allows a specified number of foreign workers (approximately 65,000 per annum) in specialty occupations to enter the United States where there are insufficient workers in the United States to perform the job. (ECF No. 114 ¶20). This H-1B visa program has stringent application requirements including, but not limited to, the applicant must disclose the specific job, its location, and the prospective supervisor's name and contact information. *Id.* In addition, a Labor Conditions Application must also be submitted which verifies that a job exists, and that the applicant will be paid the same wages as an employee who is a citizen and is

3

qualified to perform the work. (ECF No. 114 ¶21-22). Due to the individual review of each application, there is a delay up to eighteen (18) months in awarding the H-1B visas. (ECF No. 114 ¶23-24). The cost is $6,460.00 per application. (ECF No. 114 ¶52).

There are several other visa programs for which non-citizens may apply. They are the L-1 visa and the B-1 visa.

The L-1 visa allows managers of foreign businesses and employees with specialized knowledge or skill, who have already been working for the qualifying organization abroad for a period of time, to enter the United States. (ECF No. 114 ¶26). Similar to the H-1B visa, there is a requirement that the visa seeker will work in a similar position and provide detailed documentation of the work in the application. (ECF No. 114 ¶27). Unlike the H-1B visa, the cost is lower ($5,460 per application) and there are no limitations on the number of visas authorized. (ECF No. 114 ¶28).

Lastly, there is the B-1 visa program. It allows short term entrance into the United States for attending a business meeting or training. There are no wage requirements, the cost is $160.00, and there are no limits on the number of visas issued. (ECF No. 114 ¶29-31).

According to Franchitti, the "higher ups at Cognizant" required onsite managers to assist in initiating visa petitions for travel to the United States and to

provide managers' contact information on the visa forms. (ECF No. 114 ¶39). This alleged scheme allowed Cognizant to apply for visas required for future or prospective needs of Cognizant on work that had not materialized.  Franchitti alleges that "the U.S. managers needed to cover for the company if a federal officer were to inquire as to the legitimacy of the visa applicants." (ECF No. 114, ¶39).

To support this allegation, Franchitti cites to an e-mail from V. Vema (a member of Cognizant's Corporate Offshore team) sent to Franchetti and other managers:

> Since many a times, the visa petition is filed proactively (without know-how of the project that the associate might travel for in the future), we needed a point of contact from GTO US who is permanently or semi-permanently located in the US. It seems that in 1 in 100 or 200 cases, the officer evaluating the petition is within his rights to call up the onsite manager and confirm whether he is aware that the specific associate has filed a petition.
>
> . . .
>
> After speaking extensively with [Global Immigration Team] higher ups, they recommend that it is a normal practice that somebody from the vertical/horizontal offers to support this. Kindly confirm and let me know your full residential address.

(ECF No. 114 ¶39).  This business practice of Cognizant clearly obliged Franchitti to participate in its implementation. Another email clarifies the scheme:

> As discussed, it would be beneficial for you (JC, Phil) to address the team to explain the strategy regarding **visa-readiness for potential US opportunities. The message**

> to the team has been that the idea is to get associates visa-ready, so if a suitable opportunity arises in the US we can move quickly.

(ECF No. 114 ¶41)(emphasis added).

In order to pursue this scheme, Cognizant drafted and submitted to the government "false jobs and job duties" in an "invitation letter." In such a letter, a manager was "to sign invitation letters identifying jobs that do not exist, per the proactive process Cognizant announced in 2011." (ECF No. 114 ¶45). In one such application, Franchitti acknowledges that he falsely attested:

> As Assistant VP-Consulting, I have firsthand knowledge of the Cognizant project which Mr. Atmakur will be assigned to in the U.S. and attest that only an individual who has acquired advanced specialized knowledge through a combination of Cognizant overseas on-the-job and Cognizant Academy classroom training of Cognizant's proprietary methodologies [and] processes, Cognizant's GTO, and Cognizant's vertical and horizontal concepts, would be able to perform the job duties for this project.

(ECF No. 114 ¶47).

According to Franchetti, this was an ongoing business practice undertaken for years to have visas available to include Indian citizens for travel purposes (B-1 visa) when most likely H-1B visas were necessary to perform the work assigned. (ECF No. 114 ¶¶52-57). As a result, the cost of visa application fees and labor costs incurred by Cognizant plummeted. (ECF No. 114 ¶¶58-66).

Based on the above, Cognizant's alleged scheme does not fit within the "garden-variety" type of fraud category as the *Billington* court found because the

6

scheme reduced government revenue (difference in the cost of H-1B visas and B-1 visas), placed Cognizants' competitors at a disadvantage, and undermined government policies (immigration regulations) of our country.

Third, the *Lesnik* case is distinguishable. In *Lesnik*, there were many convoluted issues raised in the complaint that are not alleged here. First, in *Lesnik*, the plaintiff plead FCA, conspiracy to violate the FCA, Fair Labor Standards Act, California Labor Code, Federal Trafficking Victims Protection Reauthorization Act, and RICO violations. The Court noted that the Complaint was "incomprehensible," "difficult to parse," and "lengthy and unclear." *Lesnik*, 374 F. Supp. 3d at 938. In the case at bar, there is only one count alleging a FCA violation and the Complaint sets forth a clear and concise cause of action.

Moreover, the *Lesnik* court indicated the plaintiff failed to allege that defendants "incurred or avoided any fee associated with a visa application submitted by any plaintiff." *Lesnik*, 374 F. Supp. 3d at 939. Here, the Second Amended Complaint clearly alleges that an avoidance of visa application fees for an H-1B visa arises based upon Cognizant's scheme.

Lastly, the *Lesnik* Court ruled that an obligation under the FCA "cannot be merely a potential liability." Here, the facts alleged more than a "potential liability."  Here, there is an alleged ongoing conscious business practice to circumvent the immigration regulations in order to increase the number of Indian

7

citizens available to work in the United States, as a means to offer a lower cost and quicker turnaround time for its customers that its competitors could not undertake. Moreover, this also reduced the cost of visa application fees. To say this is merely a "potential liability" does not ring true in light of the facts alleged in the complaint. Here, Plaintiff alleges an ongoing scheme over a long period of time by management. The facts are more concrete and demonstrate that an FCA cause of action is satisfactorily alleged.

The motion to dismiss the Second Amended Complaint is denied.

## **ORDER**

This matter having come before the Court on Defendants' motion to dismiss (ECF No. 123); and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all of the foregoing reasons;

IT IS on this 16th day of August, 2023;

ORDERED that Defendants' Motion to Dismiss (ECF No. 123) is denied.

s/*Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.