UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEAN-CLAUDE FRANCHITTI, on behalf of The UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION, et al.,<br><br>Defendants. | Civil Action No. 17-6317 (ZNQ) (RLS)<br><br>MEMORANDUM OPINION AND ORDER |

**SINGH, United States Magistrate Judge.**

**THIS MATTER** comes before this Court upon the Motion by Defendants Cognizant Technology Solutions Corporation and Cognizant Technology U.S. Corporation (collectively, "Cognizant") to Compel Discovery from the United States Department of Homeland Security Office of the Inspector General ("DHS-OIG"). (Doc. No. 250). DHS-OIG opposes the Motion, (Doc. No. 255), to which Cognizant has replied, (Doc. No. 259). The Court considers the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons set forth below and for good cause shown, the Court DENIES in part and GRANTS in part the Motion.

I. **BACKGROUND AND PROCEDURAL HISTORY**

Relator Jean-Claude Franchitti ("Relator"), on behalf of the United States of America, initiated this *qui tam* matter on August 22, 2017. Relator, a former employee of Cognizant, alleges that Cognizant fraudulently misused certain work visas to import and employ foreign workers in violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733. (*See generally* Doc. No. 1). The United States declined to intervene by way of Notice of Election publicly filed on July 17,

1

2020. (Doc. No. 4). On January 27, 2021, Relator filed a First Amended Complaint ("FAC") in response to Cognizant's motion to dismiss. (Doc. Nos. 16, 17). On February 17, 2021, Cognizant moved to dismiss the FAC. (Doc. No. 18). On August 17, 2021, the Court granted in part and denied in part Defendants' motion to dismiss, sustaining Relator's reverse false claim under 31 U.S.C. § 3729(a)(1)(G) while dismissing Relator's FCA claims under 31 U.S.C. § 3729(a)(1)(A) and (B). (Doc. No. 32).

On February 2, 2023, Relator filed a Second Amended Complaint (the "SAC"). (Doc. No. 114; *see also* Doc. No. 106-07). Relator pleads a reverse false claim under section (G) of the FCA based on Relator's allegations that Cognizant: (1) knowingly applied for B-1 and L-1 visas instead of H-1B visas to decrease their financial obligations; and (2) failed to pay their H-1B visa-holding employees their wage required by 31 U.S.C. § 3729(a)(1)(G). (*See* Doc. No. 114). Cognizant moved to dismiss the SAC, (Doc. No. 123), which the Court denied on August 17, 2023, (Doc. No. 168). On August 31, 2023, Cognizant filed its Answer to the SAC. (Doc. No. 169).

Discovery is on-going. On March 28, 2024, Cognizant served requests pursuant to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) ("*Touhy*"), together with a subpoena on DHS-OIG, seeking the production of certain communications, emails, and reports generated from January 1, 2011 to December 31, 2020 concerning the L-1 and B-1 visa programs (collectively, the "Subpoena"). (Doc. Nos. 250-3 and -5). After DHS-OIG asserted objections to the Subpoena, Cognizant and DHS-OIG met and conferred several times, resulting in an agreement to limit the search for responsive documents using certain key terms. (Doc. No. 250-2; *see also* Doc. No. 250-

1 at pp. 5, 9). However, the parties reached an impasse as to the number of responsive custodians and relevant time period over which to run the searches.

More specifically, Cognizant seeks to compel the searches to include the 18 major contributors of four reports: (1) "USCIS Controls To Ensure Employers Sponsoring H-1B and L-1 Employees Pay Applicable Border Security Fee" (February 2014) (the "February 2014 Fee Report"); (2) "Implementation of L-1 Visa Regulations" (August 2013) (the "August 2013 L-1 Regulations Report"); (3) "The U.S. Citizenship and Immigration Services' Adjudication of Petitions for Nonimmigrant Workers (I-129 Petitions for H-1B and H-2B visas)" (August 2011) (the "August 2011 I-129 Petitions Report"); and (4) "USCIS Needs a Better Approach to Verify H-1B Visa Participants" (October 2017) (the "October 2017 H-1B Verification Report") (collectively, the "Subject Reports").[1] (Doc. No. 250-1 at p. 3). DHS-OIG agreed to run search terms on the email accounts of the 8 major contributors of the February 2014 Fee Report for the timeframe of July 1, 2011 to June 30, 2014 and the August 2013 L-1 Regulations Report for the timeframe of January 1, 2011 to December 31, 2013. (*See* Doc. No. 255-1 at ¶¶ 15-16, 21).

Through the instant Motion, Cognizant seeks the Court to compel DHS-OIG to run the agreed-upon search terms on the custodial emails of the major contributors for all four reports and for the time period of 2011 through 2020. (*See* Doc. No. 250-1). As a threshold matter, Cognizant contends the Court should consider the Motion pursuant to the standard of Rule 45 of the Federal Rules of Civil Procedure, rather than that standard imposed under the Administrative Procedure Act, 5 U.S.C. § 706, (the "APA"). Nevertheless, under either standard, Cognizant argues that DHS-OIG's refusal to search the additional custodial emails and for the full relevant time period

---

[1] DHS-OIG identified these reports in response to an earlier *Touhy* request and subpoena dated August 19, 2022. (*See* Doc. No. 255-1 at ¶ 15 n.4). The August 19, 2022 request and subpoena are not at issue here. (*See* Doc. No. 255 at p. 19).

3

is unreasonable and DHS-OIG has not made an adequate showing of undue burden or that any such undue burden is not outweighed by the relevancy and need for the sought-after information, particularly in the context of this *qui tam* matter. Cognizant emphasizes its purported need for the sought-after discovery in order to defend against claims that it made misrepresentations in connection with certain visa programs. It further contends that DHS-OIG is not a typical non-party to this matter because it has an interest in the outcome: it may benefit should Relator's claims succeed against Cognizant. (*See* Doc. No. 250-1 at pp. 14-15).

DHS-OIG opposes the Motion, proffering a Declaration from Darcia Rufus, a FOIA Officer and Chief of the Information Law and Disclosure Division of the Office of Counsel at DHS-OIG. (Doc. No. 255-1). DHS-OIG argues that the APA standard applies, not that of Rule 45 of the Federal Rules of Civil Procedure, and there is no basis to find its decision not to conduct further searches is arbitrary and capricious. (*See* Doc. No. 255). It further contends that it has substantially complied with the March 28, 2024 Subpoena, with supplemental productions occurring while the Motion remains pending before the Court. More specifically, DHS-OIG argues that the March 28, 2024 Subpoena sought documents relating to L-1 and B-1 visas. (*See* Doc. No. 255 at pp. 21-22). Because the August 2011 I-129 Petitions Report and the October 2017 H-1B Verification Report address other visa programs, DHS-OIG contends that they are non-responsive to the Subpoena and thus such searches and any productions would violate its *Touhy* regulations. (*See* Doc. No. 255 at pp. 21-22; Doc. No. 255-1 at ¶ 51). DHS-OIG states that it chose the time frames for the two reports "based on the dates of the reports and the likelihood of locating responsive documents." (Doc. No. 255 at p. 9).

Relying on the Rufus Declaration, DHS-OIG adds that to search, review, and produce the sought-after material would be "extremely burdensome to the agency," (Doc. No. 255 at p. 22),

4

impacting the agency's performance of its mission and duties, (Doc. No. 255-1 at ¶¶ 60-61). Through the Rufus Declaration, DHS-OIG also argues that granting the relief requested by Cognizant would result in a "laborious" effort in light of anticipated volume for review, staffing concerns, and changes to technology and employment of the custodians. (Doc. No. 255-1 at ¶¶ 36-45, 50-61).

In reply, Cognizant reiterates its argument that the appropriate standard of review is under Rule 45 of the Federal Rules of Civil Procedure, particularly where, as here, "the government is the real party in interest." (*See* Doc. No. 259 at p. 2 (footnote omitted); *see also* Doc. No. 259 at pp. 6-7). It contends that this is the majority view within the Third Circuit. (Doc. No. 259 at p. 5). Cognizant thus argues that, under Rule 45, DHS-OIG has not adequately shown an undue burden. (Doc. No. 259 at p. 7). It emphasizes its contention that the sought-after documents are critical to its defenses in this action and contends that DHS-OIG has acted arbitrarily by failing to discuss further limitations to compromise the issue. Cognizant also argues that any burden is outweighed by the importance of the sought-after discovery.

According to Cognizant, even if the APA standard applies here, the Court can reach the same conclusion that DHS-OIG has acted arbitrarily and capriciously by failing to conduct diligent searches. Cognizant characterizes DHS-OIG's argument that searching the additional custodians for the two other studies is non-responsive to the Subpoena as a strawman to shield its arbitrary and capricious decision to not comply with the Subpoena. (*See* Doc. No. 259 at p. 14). It further contends that the agency failed to consider both the need for the discovery in light of the FCA claims at issue here and the contention that the denial of producing such discovery "*benefits* its interest in the underlying litigation[.]" (Doc. No. 259 at p. 15).

## II.     LEGAL STANDARDS

Generally, parties may seek discovery regarding any nonprivileged matter that is relevant to a party's claim or defense and that is "proportional to the needs of the case, considering . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The information need not be admissible at trial. *Id.* The scope of discovery is broad but not limitless, and discovery cannot "be used as a general fishing expedition." *Burgess v. Galloway*, Civ. No. 20-6744, 2021 WL 2661290, at *2 (D.N.J. Jan. 28, 2021) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 26(b)(2)(C)(i).

A party may move to compel discovery from a non-party. Fed. R. Civ. P. 45(d)(2)(B)(i); *see also* Fed. R. Civ. P. 37(a). A party seeking to compel records from a non-party federal governmental agency may seek review either "through a separate action commenced pursuant to the [APA], or alternatively, in the Court from which the subpoena was served pursuant to Rule 45." *Aiken v. Eady*, Civ. No. 14-1811, 2016 WL 452135, at *5, *5 n.2 (D.N.J. Feb. 4, 2016) (noting that while there is no binding authority on whether an ancillary action under the APA must be filed or whether the issue may be considered as a discovery dispute in the underlying case, "[t]he majority view seems to be to consider the dispute as a discovery matter in the underlying litigation" (citing *Johnson v. Folino*, 528 F. Supp. 2d 548, 550-51 (E.D. Pa. 2007))). A district court "has broad discretion regarding the enforcement of subpoenas." *Tattle Tale Portable Alarm Sys., Inc. v. Calfee, Halter & Griswold, LLP*, Civ. No. 11-7013, 2012 WL 1191214, at *3 (D.N.J. Apr. 10, 2012) (citation omitted).

Here, Cognizant and DHS-OIG dispute whether the applicable standard of review arises under Rule 45 of the Federal Rules of Civil Procedure or the APA.[2] The applicable standard in this context remains unresolved; accordingly, the Court addresses both the APA and Rule 45. *See Mickendrow v. Watner*, Civ. No. 20-007, 2021 WL 2821176, at *3 n.5, *5 (D.N.J. July 7, 2021) (after holding that agency's decision was not arbitrary and capricious, declining to conduct "the less deferential Rule 45 analysis" as "the result would be the same"); *Johnson*, 528 F. Supp. at 551 (applying Rule 45 where a motion to compel would not be granted under either standard); *see also Harris v. McDonald*, Civ. No. 21-1851, 2022 WL 3599394, at *2 (M.D. Pa. Aug. 23, 2022) (same); *Fermaintt v. McWane, Inc.*, Civ. No. 06-5983, 2008 WL 11383665, at *4 (D.N.J. Dec. 17, 2008).

## A.   THE APA

A party contesting government activity under the APA must show that the agency action was arbitrary and capricious. 5 U.S.C. § 706(2)(A). A court, therefore, reviewing an agency action under the APA cannot substitute its own judgement but will narrowly view the action "based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020) (internal citations and editing and quotation marks omitted). The party challenging an agency action bears the burden of showing that the action was arbitrary and capricious. *See Am. Farm Bureau Fed'n v. E.P.A.*, 984 F. Supp. 2d 289, 309 (M.D. Pa. 2013), *aff'd*, 792 F.3d 281 (3d Cir. 2015) (citing *Forest Guardians v. U.S. Fish & Wildlife Serv.*, 611 F.3d 692, 704 (10th Cir. 2010); *Taggart v. GMAC Mortg., LLC*, Civ. No. 12-415, 2013 WL 4079655, at *3 n.6 (E.D. Pa. Aug. 12, 2013)). As a result, the Court will not set aside DHS-OIG's decisions as to the Subpoena if the decisions were rational and based

---

[2] The parties do not dispute that the Motion is properly presented to this Court without the need to file an ancillary action under the APA.

on the relevant applicable factors. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

### B. FEDERAL RULE OF CIVIL PROCEDURE 45

Pursuant to the Federal Rules of Civil Procedure, the Court may compel a non-party to produce documents or permit an inspection of records.[3] *See* Fed. R. Civ. P. 34(c); Fed. R. Civ. P. 45(d), (e). The scope of discovery as defined by Rule 26 similarly applies to discovery sought via a Rule 45 subpoena on a non-party. *See in re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 501 (D.N.J. 2021); *accord E.S. by and through Sanchez v. Elizabeth Bd. of Educ.*, Civ. No. 20-1027, 2022 WL 2106382, at *2 (D.N.J. June 10, 2022). Nevertheless, "a non-party to litigation is afforded greater protection from discovery than a party." *Burgess*, 2021 WL 2661290, at *3 (citing *Chazanow v. Sussex Bank*, Civ. No. 11-1094, 2014 WL 2965697, at *2 (D.N.J. July 1, 2014)). In certain instances, the Court has authority to modify a subpoena and "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or wavier applies; or . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv); *see also Schmulovich v. 1161 Rt. 9 LLC*, Civ. No. 07-597, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007). An undue burden can exist when the subpoena is "unreasonable or oppressive." *In re Lazaridis*, 865 F. Supp. 2d 521, 524 (D.N.J. 2011) (quoting *Schmulovich*, 2007 WL 2362598, at *4).

### C. DHS'S *TOUHY* REGULATIONS

DHS has promulgated regulations pursuant to 5 U.S.C. § 301 and *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), to apply to requests for the production of its records. *See* 5

---

[3] Cognizant and DHS-OIG agreed that New Jersey is the place of compliance pursuant to Rule 45 of the Federal Rules of Civil Procedure. (Doc. No. 250-1 at p. 2, n. 3).

8

U.S.C. § 301; 6 C.F.R. §§ 5.41-5.49. Accordingly, to obtain records from DHS or its components, including DHS-OIG, a requestor must submit a written statement that summarizes the information sought and its relevance to the proceeding. *See* 6 C.F.R. § 5.45(a). DHS and its components cannot produce responsive records without first obtaining the appropriate internal approval. 6 C.F.R. § 5.44. In determining whether it may produce records, DHS considers whether disclosure is precluded under 6 C.F.R. § 5.48, which identifies a variety of considerations. 6 C.F.R. § 5.48(a) (requiring consideration, "among any other pertinent considerations," of whether responding to a *Touhy* request would: be unduly burdensome; violate applicable procedural rules governing the case; violate substantive law governing privilege and confidentiality; contravene the public interest; detract from the Department's ability to conduct official business; expend public money for private purposes; involve the Department "in controversial issues not related to its mission"; and upset the Department's impartial position in private litigation that lacks a substantial government interest).

## III. DISCUSSION

As a threshold matter, the Government, while technically not a party to action, is not without interest. Indeed, in the FCA context, the United States has both interests in and rights to this matter as a real party in interest. *See United States ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419, 430 (2023) ("Even as a non-party, the Government retains an interest in the suit, and possesses specified rights."); *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 930 (2009). While the United States declined to intervene, the United States may subsequently intervene, should it choose to do so. 31 U.S.C. § 3730(c)(3). Moreover, Relator asserts theories that relate to whether Cognizant misused the visa programs processed through USCIS and DHS and its components. Simply, DHS-OIG is not a disinterested party in this context.

In this context, the Court considers the Motion to compel the search of additional custodians and the relevant time period.

### A.   ADDITIONAL CUSTODIANS

Cognizant seeks DHS-OIG to search the emails of the major contributors to the August 2011 I-129 Petitions Report and the October 2017 H-1B Verification Report. DHS-OIG has opposed such search as outside the scope of the March 28, 2024 Subpoena. A review of the March 28, 2024 Subpoena and *Touhy* request shows that, on its face, it is seeks information relevant to L-1 and B-1 visa programs. (Doc. Nos. 250-3 and -5). There is no mention of H-1B visas (or the related I-129 Petitions) anywhere within the plain language of the request and Subpoena. Nor do the request or Subpoena reference either the August 2011 I-129 Petitions Report or the October 2017 H-1B Verification Report, although it appears that Cognizant was aware of the existence of these reports before making its request on March 28, 2024.

Considering these facts under Rule 45 of the Federal Rules of Civil Procedure, the Court cannot compel a party to produce information responsive to requests not included in a subpoena. Moreover, if considering the APA, DHS-OIG's decision to exclude these custodians from its searches and productions is not arbitrary or capricious where the sought-after information was not included in the *Touhy* request. Accordingly, under either standard advocated by the parties, the Court reaches the same result: it must deny Cognizant's request to compel DHS-OIG to search the email files of the major contributors to the August 2011 I-129 Petitions Report and the October 2017 H-1B Verification Report as outside the scope of the underlying discovery requests.

### B.   RELEVANT TIME PERIOD

Cognizant also seeks the Court to compel DHS-OIG to apply the time period of 2011 through 2020, whereas DHS-OIG has run search terms on the email accounts of the major

contributors of the February 2014 Fee Report for the timeframe of July 1, 2011 to June 30, 2014 and the August 2013 L-1 Regulations Report for the timeframe of January 1, 2011 to December 31, 2013. DHS-OIG states that it chose the time frames for the two reports "based on the dates of the reports and the likelihood of locating responsive documents." (Doc. No. 255 at p. 9). Through the Rufus Declaration, it proffers that to conduct such searches over the 10-year time period "would generate voluminous records, nearly all of which would be non-responsive." (Doc. No. 255-1 at ¶ 21). The Rufus Declaration states this conclusion is "based on the work that DHS OIG performs and the agency's knowledge and expertise." (Doc. No. 255-1 at ¶ 21). DHS-OIG further emphasizes, through argument and the Rufus Declaration, the burden it believes would be unduly placed on it if the Court were to grant Cognizant's Motion.

Under the APA, the Court will uphold the DHS-OIG's decision to limit the relevant time period in searching for emails responsive to the Subpoena if the decision was rational and based on the relevant applicable factors, such as the *Touhy* regulations. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Pursuant to Rule 45, "[a]n undue burden exists when the subpoena is unreasonable or oppressive." *In re Lazaridis*, 865 F. Supp. 2d at 524 (citation and internal quotation marks omitted). To determine if a subpoena is unreasonable or oppressive, a court may consider the following factors: (1) the party's need for the production; (2) the nature and importance of the litigation; (3) the relevance of the material; (4) the breadth of the request for production; (5) the time period covered by the request; (6) the particularity with which the documents are described; and (7) the burden imposed on the subpoenaed party. *Id.*

Under either standard, the Court finds that DHS-OIG has not provided sufficient reasoning for its limited time periods or adequately shown an undue burden. Although DHS-OIG states that it limited its search to its proposed time period based on its expertise and the dates of the reports,

DHS-OIG does not articulate, for example, why it selected a July 1, 2011 starting period for the February 2014 Report but a January 1, 2011 starting period for the August 2013 Report. Nor does it explain why it chose four months—as opposed to, for example, six months—after the relevant Report as the ending period for the searches. Further, other than the blanket representation that broadening the relevant time period would result in voluminous unresponsive materials, DHS-OIG does not provide the Court with any orders of magnitude as to such volume for its consideration.

As such, on this record, the Court cannot find that the DHS-OIG's limitation on the relevant time period is rational and based on the relevant factors such that it would withstand APA scrutiny. Nor can the Court find that the Subpoena's requested time period would pose an undue burden, particularly in light of the importance of the sought-after materials to assess the merits of the issues in dispute here, as well as the Government's interest in this outcome of this matter. Nevertheless, the Court further recognizes that the full 10 year time period sought by Cognizant may indeed be overbroad in light of the dates of the two Reports at issue. As such, the Court grants in part Cognizant's Motion as to compelling DHS-OIG to search a broader time period for the relevant custodians of the two Reports that begins with January 1, 2011. However, the Cognizant and DHS-OIG shall meet and confer on an appropriate end date for the relevant time period which shall be less than the 10 years sought by Cognizant to balance any burdens, scope of relevant material, and need for the sought-after information.

## IV. CONCLUSION

Accordingly, for the reasons set forth above, and for good cause shown,

**IT IS**, on this **30th** day of **May 2025** hereby

**ORDERED** that Cognizant's Motion to Compel Discovery from DHS-OIG (Doc. No. 250) is **DENIED in part and GRANTED in part** as discussed above; and it is further

**ORDERED** that Cognizant and DHS-OIG shall meet and confer in good faith to agree upon a reasonable ending time period for the scope of searches and productions; and it is further

**OREDERED** that the Clerk of the Court shall **TERMINATE** the Motion pending at Docket Entry Number 250.

**SO ORDERED.**

_____
RUKHSANAH L. SINGH
UNITED STATES MAGISTRATE JUDGE